**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ESTEFAN ENTERPRISES, INC.,**

**Plaintiff,**

-vs-                                                        **Case No. 6:06-cv-742-Orl-31KRS**

**COCO BONGO GRILL AND BAR, INC.,**

**Defendant.**

_____

# ORDER

This matter comes before the Court on a Motion for Summary Judgment (Doc. 71) filed by

Plaintiff Estefan Enterprises, Inc. ("EEI") and Defendant's Response thereto (Doc. 76).

## I. Background

EEI, operates a Latin-themed restaurant and nightclub/bar under the Bongos Cuban Café

mark with two locations in Miami, Florida and one in Orlando, Florida. (Doc. 71 at 1). The

Orlando location is within the Downtown Disney district. (Doc. 71 at 1). While primarily a

restaurant, the atmosphere of Bongos Cuban Café changes after 10 p.m. into a nightclub/bar. (Doc.

71-2 at 2). The clientele at the Orlando location is very broad and approximately 65% of the

nightclub business comes from tourists. (Doc. 71-2 at 3). Bongos Cuban Café is open until 2 a.m.,

7 days a week. (Doc. 71 at 2).

Defendant, Coco Bongo's Grill and Bar, Inc. ("CBGB"), operates a nightclub/bar located

on Orange Blossom Trail in Orlando, Florida approximately 11 miles from Bongos Cuban Café.

CBGB is only open three nights a week (Thursday, Friday, and Saturday) and does not serve food.

(Doc. 71 at 2). The clientele at CBGB is primarily the local, younger adult, Hispanic club goer. (Doc. 76 at 11).

EEI holds the registered trademark "Bongos Cuban Café"[1] and has brought this action alleging, *inter alia,* that CBGB's use of the word "Bongo" violates the Lanham Act and CBGB should be enjoined from further use of the word. (Doc. 71 at 5).

## II. Standards of Review

A party is entitled to summary judgement when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25;

---

[1]EEI holds Registration No. 2,490,999 for "Bongos Cuban Café."(Doc. 71-3 at 1).

*Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

## III. Legal Analysis

In a trademark infringement action, a plaintiff must prove that (1) its mark is valid and (2) the defendant's use of the contested mark is likely to cause confusion.  15 U.S.C.A. §1114(1)(a) (West 2007); *Dieter v. B & H Indust. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989). CBGB does not contest the validity of EEI's mark. However, the likelihood of confusion between "Bongos Cuban Café" and "Coco Bongo's" is in dispute.

Determining likelihood of confusion requires analysis of seven factors: (1) type of mark, (2) similarity of mark, (3) similarity of the products that the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent, and (7) actual confusion. *Dieter*, 880 F.2d at 326. The 11th Circuit has held that the type of

mark and evidence of actual confusion are the two most important factors. *Id.* There is no brightline test to determine how much evidence of confusion is enough. When reviewing the evidence the Court must take into consideration the circumstances surrounding each particular case. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 844 (11th Cir. 1983).

   A) Type of Mark

   Courts have traditionally divided marks into four categories, in order of increasing strength: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *American Television and Communications Corp. v. American Communications and Television, Inc.*, 810 F.2d 1546, 1548 (11th Cir. 1987). In the instant case, the classification of EEI's mark as either descriptive or suggestive is at issue. A descriptive mark is one that "identif[ies] a characteristic or quality of an article or service." A suggestive mark "suggests, rather than describes, a characteristic of the goods or services and requires an effort of the imagination by the consumer to be understood as descriptive." *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 115-116 (5th Cir. 1979).[2] If a mark is descriptive, proof of a secondary meaning of that mark is necessary for the owner to have a protectable interest in that mark. However, if the mark is suggestive, proof of a secondary meaning is not necessary.[3] *Id.*

---

   [2]All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

   [3]Suggestive marks are inherently distinctive thus making proof of a secondary meaning unnecessary, whereas a descriptive mark is not inherently distinctive and therefore, proof of a secondary meaning is necessary. *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1522-1523 (11th Cir. 1999).

CBGB argues that because of common use of the word "Bongos" by third parties[4] and the existence of a "logical connection" between the word "Bongos" and the services that EEI provides, EEI's mark is descriptive. (Doc. 76 at 6-8). Conversely, EEI argues that the mark is suggestive because it requires imagination on the part of the consumer to make the connection between bongos, a musical instrument, and the services provided by EEI.[5] (Doc. 71 at 7). Additionally, EEI relies on the classification of the mark by the United States Patent and Trademark Office ("USPTO") to provide evidence that the mark is suggestive.

Courts have relied on the USPTO's classification of a trademark to provide *prima facie* evidence of whether the mark is descriptive or suggestive. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 934 (4th Cir. 1995). The USPTO requires proof of secondary meaning before it grants registration if the mark is descriptive, whereas it does not require proof of secondary meaning if the mark is suggestive. *Id.* In the instant case, the USPTO did not require evidence of secondary meaning when it approved EEI's mark,[6] thus providing *prima facie*

_____

[4]Third party use of a mark is important when gauging the strength of a mark. The more third parties use the mark, the weaker it is, and less protection it deserves. *See Frehling*, 192 F.3d at 1336.

[5]In its motion for summary judgement, EEI only addresses the definition of bongos as a musical instrument and its relation to the establishment's name. (Doc. 71 at 7). However, in EEI's reply to CBGB's response to the motion for summary judgment, EEI claims that the word "Bongos" was selected "as a tribute" to Ms. Estefan's pet kangaroo that had passed away. (Doc. 87 at 5 n.4).

[6]The fact that the USPTO did not insert a "2(f)" above the serial number on the bottom right of EEI's mark registration certificate is proof that EEI provided sufficient evidence of the mark's distinctiveness under 15 U.S.C. § 1052(f) prior to registration. *See Lone Star Steakhouse & Saloon, Inc.*, 43 F.3d at 936 n.15.

evidence that EEI's mark is suggestive. However, while the characterization given by the USPTO is persuasive, it is not conclusive evidence that the mark is suggestive.[7]

EEI also argues that its mark is "incontestable" under 15 U.S.C. §1065 ("§ 1065") and therefore the mark cannot be challenged on the ground that it is merely descriptive. (Doc. 71 at 8). Upon a closer review of § 1065, EEI's "incontestable" argument fails. Section 1065 requires that, for a mark to be classified as incontestable, EEI must file an affidavit within a year after five years of continuous use of the mark and that there must be "no proceeding involving said rights pending . . . in a court not finally disposed of." 15 U.S.C.A. § 1065 (West 2007); *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1540-1541 (11th Cir. 1986). EEI's mark was registered with the USPTO on September 18, 2001. (Doc. 71-3 at 1). EEI timely filed an affidavit of incontestability in January of 2007. (Doc. 71-20 at 2). However, EEI filed the complaint for the instant case, which is still pending, on May 31, 2006. (Doc 71-20 at 2). Therefore, when EEI filed for incontestability, there was a "proceeding involving said rights pending . . . in a court and not finally disposed of," and § 1065(2) prevents EEI's mark from being classified as incontestable. *See Sizzler Family Steak House*, 793 F.2d at 1541.

However, EEI contends that even if the mark is descriptive, it can show that the mark has acquired a secondary meaning and therefore it has a protectable interest in the mark. (Doc. 71 at 8). Secondary meaning is defined as "the connection in the consumer's mind between the mark

---

[7]The 11th circuit has held that "Although we will bestow proper respect to the determinations of the PTO, we will not defer to an ethereal determination that is not affirmatively stated by the administrative agency." *Investacorp*, 931 F.2d at 1524.

and the provider of the service." *Investacorp, Inc.*, 931 F.2d at 1525. There are four factors considered in determining whether a mark has achieved a secondary meaning:

> (1) The length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's ... business; and (4) the extent to which the public actually identifies the name with the plaintiff's [service].

*Conagra, Inc., v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984). Additionally, the mark must have acquired the secondary meaning before the defendant first used the same or similar mark. *See Investacorp, Inc.*, 931 F.2d at 1524. Plaintiff bears the burden of sustaining "a high degree of proof" in establishing a secondary meaning for a descriptive term, and this requisite high degree of proof must be considered by the Court when ruling on a motion for summary judgment. *Id.* at 1525.

EEI's fulfillment of the first three factors is not contested by CBGB, however, the fourth is at issue. CBGB argues that EEI's mark has not acquired a secondary meaning because the public does not identify the word "Bongos" with EEI's services because of extensive third party use of the word "Bongos." (Doc. 76 at 8-9). EEI argues that because it has used the mark continuously over a ten year period, there is a presumption of secondary meaning under 15 U.S.C. § 1052(f), ("§ 1052(f)"), which requires only five years of continuous use. EEI began using its mark on September 18, 1997 and would have acquired presumption of secondary use under § 1052(f) on September 18, 2002. However, because CBGB began using its name on July 9, 2001, (Doc. 71-7

at 3), EEI's mark did not acquire a presumption of a secondary use under § 1052(f) before CBGB first used its name.[8]

EEI also argues that because sales are probative as to whether the public actually identifies the mark with its services, its large sales figure provides evidence that its mark has achieved a secondary meaning. (Doc. 71 at 9-10). However, EEI's argument fails because only the figure for *total* sales are provided. EEI's mark needed to achieve a secondary meaning before CBGB began using its name, therefore the sales figure as of July 9, 2001 is necessary, not the total amount of sales. Sales may be probative of a secondary meaning, but EEI has not provided the evidence necessary to make this determination.

Thus, the Court cannot determine as a matter of law that this mark is suggestive, nor does the evidence support a finding of secondary meaning. Accordingly, the Court cannot, at this stage of the proceedings, make a legal determination as to the nature of EEI's mark.

*B) Other Factors*

The evidence before the Court does not establish, as a matter of law, that actual confusion exists. These marks are somewhat dissimilar ("Bongos" vs. "Coco Bongo's"), the service offered by the parties are dissimilar (restaurant vs. nightclub), and their customer base is different (tourists vs. locals), given these obvious differences, there are material issues of disputed fact which preclude a finding that Defendant's mark is likely to cause confusion.

---

[8]The presumption is not mandatory and neither the USPTO or the Court has to accept the presumption. The weight of the 5 year usage evidence will vary depending upon the background and the inherent distinctiveness of the designation and the other evidence of the record. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 15:62 (4th ed. 2001); *See In re Garcia*, 172 U.S.P.Q. 732 (T.T.A.B. 1972); *In re Ennco Display Systems Inc.*, 56 U.S.P.Q.2d 1279, 1283-1286 (T.T.A.B. 2000).

**IV. Conclusion**

Accordingly, it is

**ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 71) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 4, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party